UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

AJANTA, INC. d/b/a QUALITY INN OF ROME,

      Plaintiff,

                                   Docket No.:  6:16-cv-00309 (BKS/TWD)

vs.

ERIE INSURANCE COMPANY,

      Defendant.

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## ERIE INSURANCE COMPANY'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

**RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
Attorneys for Defendant
Erie Insurance Company
(Marco Cercone, Esq., of Counsel)
(James Graber, Esq., of Counsel)
1600 Liberty Building
Buffalo, New York  14202
cercone@ruppbaase.com
graber@ruppbaase.com
(716) 854-3400

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ......................................................................... p. 1

**APPLICABLE LAW AND MOTION STANDARD** ........................................ p. 1

**ARGUMENT** ................................................................................................... p. 3

       **THE EXCLUSIONS CONTAINED IN THE INSURANCE
       CONTRACT BETWEEN THE PARTIES WARRANT DISMISSAL
       OF PLAINTIFF'S COMPLAINT AGAINST ERIE** ............................... p. 3

**CONCLUSION** ............................................................................................... p. 10

## PRELIMINARY STATEMENT

Erie Insurance Company ("Erie") submits this memorandum of law in support of its motion for summary judgment pursuant to the Federal Rules of Civil Procedure ("FRCvP") Rule 56.  As is discussed below, Erie's motion should be granted and plaintiff's complaint should be dismissed in its entirety.

## APPLICABLE LAW AND MOTION STANDARD

New York substantive law is applicable to the resolution of this matter because there is an implicit agreement between the parties as plaintiff's claims arise under New York law, Erie cites to New York law in this brief, and Erie does not anticipate any other party will argue the law of another state applies.  *Federal Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566-567 (2d Cir. 2011) *citing Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d. Cir. 2000) (holding that a mere implied agreement between the parties will suffice for choice of law purposes).

With respect to the motion standard, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCvP 56(c).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In moving for summary judgment against a party who will bear the

ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *J.J.J. Props., Inc., v. The Travelers Indem. Co.*, 2008 U.S. Dist. LEXIS 51992 at * 6 (S.D.N.Y. 2008) (internal quotes and citation omitted).  The nonmoving party must present evidence on which a jury reasonably could find for the non-movant.  *Jeffreys v. The City of New York*, 426 F.3d 549, 554 (2d. Cir. 2005) *quoting Anderson*, 477 U.S. at 252.  "[N]onmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts[.]'"  *Id. quoting Matshshita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In addition, a nonmoving party may not defeat summary judgment with conclusory allegations or speculation.  *Jeffreys*, 426 F.3d at 554.

When determining a motion for summary judgment, the court resolves any ambiguities and draws inferences from the facts in a light most favorable to the non-moving party.  *Erie Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 2014 U.S. Dist. LEXIS 46515, 7 (N.D.N.Y. 2014) *citing Jeffreys*, 426 F.3d at 553.  However, when opposing parties present differing versions of the events, one of which blatantly is contradicted by the record such that no reasonable jury would believe that version, a court should not adopt that version of facts when ruling on a summary judgment motion.  *Scott*, 550 U.S. at 380.  Therefore, "[s]ummary judgment is appropriate only where, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'"  *Genecco Produce, Inc. v. Sandia Depot, Inc.*, 386 F. Supp. 2d 165, 170 (W.D.N.Y. 2005) *quoting Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

<u>ARGUMENT</u>

**THE EXCLUSIONS CONTAINED IN THE INSURANCE CONTRACT
BETWEEN THE PARTIES WARRANT DISMISSAL
OF PLAINTIFF'S COMPLAINT AGAINST ERIE**

In New York, insureds routinely are precluded from recovering under an insurance contract when the cause of loss is deterioration, faulty workmanship, and/or improper maintenance. *See, e.g., Baker Residential Ltd. P'ship v. Travelers Ins. Co.*, 10 A.D.3d 586 (1st Dep't 2004) (faulty workmanship/construction exclusion precluded coverage); *Catucci v. Greenwich Ins. Co.*, 37 A.D.3d 513 (2d Dep't 2007) (deterioration exclusion precluded coverage); *Broome Cty. v. The Travelers Indem. Co.*, 125 A.D.3d 1241, (3d Dep't 2015) (faulty-workmanship exclusion precluded coverage); *Narob Dev. Corp. v. Ins. Co. of N. Am.*, 219 A.D.2d 454 (1st Dep't 1995) (defective-workmanship exclusion precluded coverage); *Henry Modell & Co. v. Gen. Ins. Co. of Trieste & Venice*, 193 A.D.2d 412 (1st Dep't 1993) (faulty-maintenance exclusion precluded coverage). The rationale behind this well-rooted principle is that insurance contracts are intended to cover fortuitous events, which simply are events happening by accident or chance, such as fire. *See 80 Broad St. Co. v. United States Fire Ins. Co.*, 88 Misc. 2d 706 (Sup. Ct., N.Y. Co. 1975), *aff'd* 54 A.D.2d 888 (1st Dep't 1976), *lv. denied* 42 N.Y.2d 801 (1977). Indeed, an insurance contract "does not obligate the insurer to pay for loss or damage resulting wholly from the nature and inherent qualities of the property insured." *Id.* at 707 (citations omitted).

The foregoing legal principles squarely are at dispute in this case. Specifically, plaintiff claims that one snow/wind storm damaged its roof. However, the actual cause of the damage was not a single storm, but rather years of wear and tear, deterioration, neglect, faulty

workmanship, and improper maintenance.  Erie retained and disclosed an expert, James Trevvett, who reached this conclusion.  To date, the only proof plaintiff has forwarded to rebut Mr. Trevvett is the opinion of its own expert, Steven M. Thomas.  As is addressed in Erie's simultaneous motion to strike and preclude, however, Mr. Thomas is not qualified to offer testimony in this case.  Left with no other evidence in opposition to Mr. Trevvett's assessment, Erie therefore moves for summary judgment as no issues of fact exist warranting a trial in this matter.

By way of example, in *United States Dredging Corp. v. Lexington Ins. Co.*, 99 A.D.3d 695 (2d Dep't 2012), the insured commenced a lawsuit to recover proceeds from its insurer based on an incident wherein the insured's pier, along with a large crane situated on top of it, collapsed.  While the insured argued that the collapse was caused by wind, the insurer disclaimed coverage as it concluded that the collapse was caused by years of wear and tear.  The insurer established that the pier structurally had been compromised and was deteriorated.  Ultimately, the insured's complaint in *United States Dredging* was dismissed because, *inter alia*, it failed to present prima-facie proof that the loss and resulting damage was caused by wind.  On appeal, the Second Department affirmed that decision.  Specifically, the Second Department held that the evidence demonstrated years of wear and tear, and that wear and tear, deterioration, and collapse "were explicitly excluded from coverage."  *Id.*

In *Copacabana Realty LLC v. Fireman's Fund Ins. Co.*, 2013 N.Y. Misc. LEXIS 1877 (Sup. Ct., Suffolk Co. 2013), *aff'd* 130 A.D.3d 771 (2d Dep't 2015), plaintiff had a homeowners' policy covering a residential property on Long Island.  When plaintiff filed an

- 4 -

insurance claim for a sagging kitchen floor, the insurer denied coverage after it determined the loss was caused by faulty construction and defective workmanship, which were excluded causes of loss under the policy.  In particular, the insurer inspected the property and discovered that the joists below the floor had holes made in them to facilitate electrical wiring and plumbing. Naturally, the holes compromised the structural integrity of floor and caused it to sag. Ultimately, the trial court upheld the insurer's denial of coverage pursuant to the faulty construction and defective workmanship exclusions.  The decision was affirmed on appeal.

A similar outcome was reached by the Fourth Department in *St. John Fisher Coll. v. Cont'l Corp.*, 184 A.D.2d 1063 (4th Dep't 1992).  While the *St. John Fisher* opinion is a mere one sentence, the Fourth Department notably cited three cases that substantively address faulty construction insurance-policy provisions: *Luttenberger v. Allstate Ins.*, 122 Misc. 2d 365 (Dist. Ct., Suffolk Co. 1984); *Derenzo v. State Farm Mut. Ins. Co.*, 141 Misc. 2d 456 (Sup. Ct., Rensselaer Co. 1988); and *80 Broad St. Co. v. United States Fire Ins. Co.*, 88 Misc. 2d 706 (Sup. Ct., N.Y. Co. 1975), *aff'd* 54 A.D.2d 888 (1st Dep't 1976), *lv. denied* 42 N.Y.2d 801 (1977).  These cases more fully are addressed below.

In *Luttenberger*, the insured alleged that after a snowstorm, a large amount of snow rested upon the eaves of her home, causing them to pull away.  The insurer determined that the cause of the loss was a construction defect and it denied coverage.  Specifically, the insurer concluded that there were not enough nails used in the support beams and the ones used were placed as much as 44 inches apart.  While the insured attempted to challenge the denial of coverage in litigation, the court sided with the insurer.  It specifically held: "[T]he faulty

- 5 -

construction of the eaves falls within the definition of a latent defect thereby excluding coverage under the homeowner's policy." *Luttenberger*, 122 Misc. 2d at 366.

In *Derenzo*, the insured, while building a property, hired an entity to pour the property's foundation and to erect basement walls. Three weeks after this work was completed, the insured noticed cracks in the floor and walls. The time to remedy the work had expired, so the insured reported the claim to his insurer. The insurer denied coverage, however, relying on the faulty construction/latent defect exclusions. While the insured attempted to challenge that denial of coverage in litigation, the court sided with the insurer. The court noted that both the insured's and insurer's experts agreed that the cracks found in the foundation walls and floors were structural in nature and were the result of inadequate or improper design or construction. Specifically, damage to the insured's property was caused by footing settlement, insufficient concrete thickness, and inadequate subbase soil compaction. In turn, the court held that "such construction defects constitute latent defects which are excluded from coverage under the policy." *Derenzo*, 141 Misc. 2d at 460.

Finally, in *80 Broad St.*, the insured sought to recover for loss sustained as a result of the buckling of marble facing on its building constructed in 1931. The insured's engineer attributed the buckling to failure of masonry covering of the steel beams called for by local code, the bending of galvanized metal anchors in the field before installation, and the failure to connect steel beams to steel plates, which caused moisture penetration. In other words, the cause of loss was "improper construction," and both parties agreed on this point. The court noted that while the improper construction occurred 39 years before the insured commenced litigation after the

- 6 -

insurer denied coverage, the loss was excluded under the policy.  In finding in favor of the insurer, the court underscored that "a policy does not obligate [an] insurer to pay for loss or damage resulting wholly from the nature and inherent qualities of the property insured," but rather losses caused by "chance or accident."  *80 Broad St.*, 88 Misc. 2d at 707.

Here, like the case law set forth above, the insurance contract specifically excludes coverage for deterioration, faulty workmanship, and improper maintenance:

**SECTION III – EXCLUSIONS**

**A.  Coverages 1, 2, 3,** and **5**

We do not cover under Building(s) – Coverage 1; Business Personal Property and Personal Property of Others – Coverage 2; Additional Income Protection – Coverage 3; Glass and Lettering – Coverage 4; and Signs, Lights and Clocks – Coverage 5 "loss" or damage caused directly or indirectly by any of the following.  Such "loss" or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the "loss":

1.  Deterioration or depreciation.

          *           *           *

3.  "Loss" or damage caused by or resulting from any of the following:

    c.  By faulty, inadequate, or defective:

        1) Planning, zoning, development, surveying;
        2) Design, specifications, workmanship, repair, construction, renovating, remodeling, grading, or compaction;
        3) Materials used in repair, construction, renovation, or remodeling; or
        4) Maintenance;

- 7 -

> of property whether on or off the insured premises by anyone, but if "loss" by a peril insured against results, we will pay for the ensuing "loss".
>
> \*                  \*                  \*
>
> **B. Coverages 1, 2,** and **3**
>
> We do not cover under Building(s) – Coverage 1, Business Personal Property and Personal Property of Others – Coverage 2, and Additional Income Protection – Coverage 3 "loss" or damage caused:
>
> 1. By:
>
>      a.  Wear and tear, rust, or corrosion;
>      b.  Change in flavor, color, texture, or finish;
>      c.  Damp or dry air;
>      d.  Inherent vice;
>      e.  Smog;
>      f.  Latent or hidden defect;
>      g.  Marring or scratching;
>      h.  Smoke, vapor, or gases from agricultural or industrial operation;
>      i.  Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs, or ceilings…

*See* Declaration of James Graber, Esq., executed on May 10, 2017 ("Graber Declaration"), Exhibit A, Form FX-00-02 (Ed. 6/13) UF -3554, pp. 5-7.  By all accounts, these exclusions are what caused plaintiff's loss here.


Specifically, Erie's expert, James Trevvett, inspected plaintiff's roof and determined that it was old, deteriorated, improperly constructed, and poorly maintained. *See* Affidavit of James Trevvett, sworn on May 10, 2017, with exhibits ("Trevvett Affidavit") at ¶¶ 5-30.  Indeed, the roof predominantly was 24-years-old at the time of the alleged loss in

- 8 -

February 2014 and plaintiff's General Manager, Mansukh Paghdal, admitted that no significant repairs had been completed to the roof, aside from a partial replacement in 2001.  That replacement, however, was defective, which only further exacerbated the problems to plaintiff's roof.  *See* Trevvett Affidavit at ¶¶ 18-25.   Indeed, at the time Mr. Trevvett inspected the roof, he observed open seams, deterioration caused by grease, improperly overlapped roof membrane, and ponding.  *Id.*

Furthermore, when a repair was needed to the roof, such as "a corner or something that was peeling," plaintiff utilized a resident handyman, Edward Goodrich, that had no experience whatsoever with replacing and/or repairing roofs.  *See* Graber Declaration at Exhibit G at p. 36, line 25 through p. 38, line 9; *see also* Exhibit H at pp. 16-19.  Mr. Goodrich admitted that he does not know what an EPDM roof is, never has installed an EPDM roof, never had taken a class on EPDM roofs, never read a manufacturer's warranty with regard to any of the roofing material on plaintiff's property, never researched industry accepted EPDM roof repair material, and "never really got into roofs."  *See* Graber Declaration at Exhibit H, pp. 16-19.  These facts explain why Mr. Trevvett observed an open hole in the roof, a portion of the roof flapping in the wind, and improper asphalt-based repairs to an EPDM roof.  *See* Trevvett Affidavit at ¶¶ 26-28.  Indeed, like *United States Dredging*, plaintiff's roof damage was not caused by a snow or wind storm, but rather years of neglect in the form of deterioration and faulty repairs/maintenance.

At its core, insurance contracts cover fortuitous events such as fire, and there has been so such occurrence to plaintiff's roof in this case.  Rather, plaintiff is attempting to use a

winter storm as a pretext to have Erie pay for a new commercial roof that already was in

disrepair before the storm.  Accordingly, as was the outcome in each of the foregoing cases,

including *United States Dredging*, *Copacabana Realty*, *St. John Fisher Coll.*, *Luttenberger*,

*Derenzo*, and *80 Broad St.*, this Court should find in favor of Erie and dismiss plaintiff's

complaint in its entirety.  Put simply, plaintiff's loss is excluded from coverage under the policy.


## CONCLUSION

For the reasons stated above, Erie's motion should be granted and plaintiff's

entire complaint should be dismissed.


Dated: May 10, 2017
      Buffalo, New York

                **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                Attorneys for Defendant
                Erie Insurance Company


                By:   s/ James Graber
                        Marco Cercone, Esq., of Counsel
                            NDNY Bar Roll No. 514442
                        James Graber, Esq., of Counsel
                            NDNY Bar Roll No. 519204
                1600 Liberty Building
                Buffalo, New York  14202
                (716) 854-3400

TO:   **MERLIN LAW GROUP, P.C.**
       Attorneys for Plaintiff
       Ajanta, Inc. d/b/a Quality Inn of Rome
       (Jennifer M. Van Voorhis, Esq., of Counsel)
       125 Half Mile Road, Suite 200
       Red Bank, New Jersey  07701
       (732) 933-2700
       jvanvoorhis@merlinlawgroup.com